IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Eric Jordan, | ) | Case No.: 4:22-cv-3345-JD-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| South Carolina Department of | ) | |
| Education, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court with the Report and Recommendation ("Report") of United States Magistrate Judge Kaymani D. West (DE 81), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) of the District of South Carolina concerning Defendant's renewed[1] Motion for Summary Judgment.[2] (DE 74.)

**A. Background**

The Report sets forth the relevant facts and legal standards, which the Court incorporates without a complete recitation. In any event, the Court provides this summary as a brief background.

---

[1]     Defendant withdrew his original Motion for Summary Judgment (DE 36) while the parties pursued mediation.

[2]     The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

Plaintiff Eric Jordan ("Plaintiff" or "Jordan"), an African American male, sued his former employer, the South Carolina Department of Education ("Defendant" or "Department of Education"). Plaintiff began his employment with Defendant on the Bus Transportation Team in the Horry Bus Shop in February 2018 as a Mechanic III. (DE 74-3.) Plaintiff was the only African-American employee in the Horry Bus Shop ("Shop"), and he worked as a lube technician alongside James Sessions ("Sessions") and Jerry McCracken ("McCracken"), who were caucasian males. Plaintiff's direct supervisor was Mike Karczeski ("Karczeski"). (DE 77-16 at 35.) Plaintiff and the other lube technicians had a schedule that would send them to different schools on different days. Plaintiff and Sessions usually traveled together. (*Id.* at 38.) They would drive a fuel tanker truck to other schools to refuel buses and perform routine maintenance on buses. (*Id.*)

Plaintiff says he began experiencing issues with his coworkers as early as his first day of employment. (DE 1-1 at 5.) Plaintiff contends the first words he heard from McCracken were when he introduced Plaintiff to the all-white team saying, "They told me they were going to hire somebody, but I didn't know it was going to be one of you all." (DE 77-16 at 57.) Plaintiff did not ask McCracken what he meant, nor did he report the comment to his supervisor, Karczeski. (*Id.* at 58 ("I'm the new guy on camp, so I just blew it off. I was just like okay. Maybe the guy didn't mean anything by it."). Plaintiff claims that after that encounter, McCracken flashed his KKK card at him. (*Id.* at 59-60.) Plaintiff also recalled a second instance with McCracken and his KKK card. (*Id.* at 64.) Plaintiff testified that

he was traveling with McCracken, and McCracken declared, "I'm not taking orders from a black man." Plaintiff indicated he reported this to Karczeski the same day. Plaintiff states he told Karczeski he needed to give orders directly to McCracken, telling Karczeski, "I'm sick of them referring to me as a black man or a n***** or a spook or gator bait or whatever they want to say or a grease monkey." Plaintiff associated the "spook" comment with Jim Shehee. (transcript incorrectly spells name "Shewy"). Plaintiff testified Shehee would randomly say of Plaintiff, "There goes the old spook." Plaintiff attributes the "grease monkey" comment to another mechanic, Ruben Wass, and the gator bait comment to McCracken.

(DE 81 at 5; quoting DE 77-16 at 79-81) (citations omitted.) On another occasion, Plaintiff said that he was refueling the buses with his mechanic coworker, Patrick Fowler ("Fowler"). "Fowler called [Plaintiff] a n***** because he got mad[] about something because [Plaintiff] was doing – [Plaintiff] was working and pulling a line, and he got mad and he called me a n*****, and [Plaintiff] got mad and I called JoAnn."[3] (DE 81 at 4.)

Karczeski testified that the first time he became aware that Plaintiff had a problem with McCracken was on the morning of July 22, 2021, when he opened and read an email from Plaintiff dated July 21, 2021. (DE 81 at 7.) The email sent to Karczeski by Plaintiff at 2:52 pm on July 21, 2021, provided:

Good afternoon Mr. Mike just to let you know that I will do anything that you ask of me but for my safety and my best interest I need to stay away from Jerry I've tried taking the low roll about certain things but enough is enough. I don't come to you complaining about how I'm treated because I just try to let the water fall off my back and keep the Peace but I promise you that I'm no longer gone be addressed or called out my NAME!!!

---

[3]     JoAnn Granata was an area supervisor for Defendant.

(DE 74-6 ) (punctuation and grammar as in original). On August 6, 2021, Defendant informed McCracken that his employment was being terminated for violating the Department's Disciplinary Policy 605.1. (DE 74-11.) The letter said that McCraken

> had participated in conduct unbecoming a state employee when using inappropriate and derogatory language with another employee. The language involved profanity and language of a racial nature, including racial slurs. The use of the language also is discourteous treatment of employees and indicates a failure to maintain satisfactory or harmonious working relationships with employees.

(*Id.*)

After McCraken's termination, Plaintiff made several complaints about mistreatment at the shop. Plaintiff told Lisa McCloud ("McCloud"), Human Resources Director, that.

> I've been trying to just not say anything but ever[] since I said something to you I've been Targeted in this shop. On yesterday, they took and turned the air off and put a lock on the disconnect box. After my Co-Worker James said he was calling HR they took the lock off and turned it back on!!! I just wanted you to be aware of what was going on here!!!!

(DE 74-13.) Plaintiff also emailed Garry A. Fast ("Fast"), Transportation Director, informing him that he believed he was being treated in a manner that was "very unfair to [him]." (DE 74-17 at 2.) The email said,

> he did not mind doing any task that is "within REASON but when you tell me to do something in front of another EMPLOYEE as if you're making FUN of me I think it's very disrespectful!" Plaintiff recounts an incident in which Shop secretary Daniello asked Plaintiff to clean and cut around the front gate. Plaintiff said he did that task and then got permission to go get a snack. When Plaintiff returned, Daniello then told Plaintiff she was going to need him to cut around the drains. Plaintiff indicated he did that task before stopping to have his snack. He noted, however, that another employee, Dennis Kitchen, was not busy and was "standing there smirking and laughing at me." Plaintiff ended the email by indicating he wished he "could come to work and be respected" and treated "LIKE EVERYONE ELSE HERE!!! FAIR . . . ." Plaintiff

4

indicated he was bothered by the tone in which Daniello asked him to do the tasks. ("THE WAY YOU ASK has a lot to do with it (tone) she was starring and looking at me like she was wanting me to refuse or say that I wasn't going to do it the part that I didn't like was being laughed at by another Co-Worker and her not realizing that I haven't had lunch but everybody else has so I didn't even drink my drink or eat my snack I just went and did as I was told!!!!!").

(*Id.*) (citations omitted.) Fast notified McCloud of the complaint, and he began to investigate the matter. (DE 74-17.) While the matter was being investigated, Plaintiff went on a leave of absence.[4] (DE 81 at 16.)

Plaintiff filed an amended complaint on October 3, 2023. (DE 30.) The Amended Complaint alleges several employment-related claims of race-based discrimination, hostile work environment, and retaliation. One claim is brought under the South Carolina Human Affairs Law ("SCHAL"), and the remaining claims are under Title VII. Plaintiff also alleges several state-law claims, including gross negligence, intentional infliction of emotional distress/outrage, defamation, and violation of the South Carolina Whistleblower's Act. (DE 30.)

On October 10, 2024, Defendant moved for summary judgment on Plaintiff's claims. (DE 74-1 at 1.) Plaintiff responded arguing that there were material disputed

---

[4]     Plaintiff also took a medical leave of absence in 2023. (DE 77-14.) According to an April 21, 2023, letter Plaintiff had "been out of work since November 4, 2021[,]" and according to his physician, Plaintiff could not return to work. (DE 74-22.) The letter also said that

> it had been four weeks since the March 22, 2023 appointment, and Defendant had not received any further communication regarding Plaintiff's return-to-work date. The letter indicated Plaintiff had been taken out of work again on November 4, 2021 and remained out of work as of that date. Plaintiff was advised that his employment was ending effective April 21, 2023.

(*Id.*) (citations omitted.)

facts based on "numerous race related incidents the Plaintiff experienced at the Horry Bus Shop." (DE 77 at 23.)

### B. Report and Recommendation

On January 16, 2025, the Magistrate Judge issued the Report recommending that Defendants' motion for summary judgment be granted as to all federal claims and the related SCHAL claims. (DE 81.) As to Plaintiff's Title VII and SCHAL claims, the Report found that

> Defendant undertook action as to reported issues with Fowler. When Defendant's representative followed up with Plaintiff, he indicated he was "okay." Pl. Dep. 61-62. When Plaintiff reported the July 2021 incident with McCracken Defendant promptly investigated, separated Plaintiff and McCracken, and quickly terminated McCracken. Plaintiff has not presented evidence from which a reasonable juror could find Defendant acted negligently in taking actions to investigate and handle severe or pervasive harassment about which it was made aware.

(DE 81 at 26.) As for Plaintiff's retaliation claim, the Report found, among other things, that

- "Plaintiff has offered no factual detail regarding the denial of a request to begin work early that was denied." (*Id.* at 27.)

- Plaintiff generally indicates there is circumstantial evidence that he was disliked by coworkers and was subjected to intimidating and humiliating behavior because he complained of racism. (Citation omitted.) As an initial matter, it is black-letter law that merely being "disliked by coworkers" is not actionable under Title VII. (*Id.* at 28.)

- "Further, Plaintiff has not shown material impact on his job. Plaintiff continued to work at the Shop until he took a medical leave of absence in January 2020; he eventually was terminated in April 2023." (*Id.* at 29.)

As for Plaintiff's state-law claims, the Report said since it recommends dismissing all federal law claims, the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. (DE 81 at 30); citing *Henderson v.*

*Harmon*, No. 22-6029, 2024 WL 2195579, at *6 (4th Cir. May 16, 2024) ("[G]enerally, when a district court dismisses all federal claims in the early stages of litigation— e.g., at the summary-judgment stage—it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice.") (internal quotation marks omitted). Plaintiff has not objected to the Report.[5]

### C. Legal Standard

In the absence of objections to the Report and Recommendation, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). The Court must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### D. Conclusion

Because Plaintiff has not objected, after a thorough review of the Report and Recommendation and the record in this case, the Court finds no clear error on the face of the record. Thus, the Court adopts the Report (DE 81) and incorporates it here by reference.

It is, therefore, **ORDERED** that Defendants' Motion for Summary Judgment (DE 74) is granted as to all federal claims and the SCHAL claims, and the remaining state-law-based claims are remanded to the Horry County Court of Common Pleas.

---

[5]     On January 21, 2025, Plaintiff requested more time to object to the Report. Although Plaintiff is represented, Plaintiff says his attorney is "very sick" and cannot represent him. His attorney has not moved to withdraw as counsel of record, and Plaintiff was granted an extension until March 5, 2025, to object.

**IT IS SO ORDERED**.

Joseph Dawson, III
United States District Judge

Florence, South Carolina
April 9, 2025

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order within thirty (30) days from this date under Rules 3 and 4 of the Federal Rules of Appellate Procedure.